IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DENNIS BRILEY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | C.A. NO. C-05-314 |
| | § | |
| FRANCIS J. HARVEY, | § | |
| *Secretary of the Army*, | § | |
| | § | |
| Defendant. | § | |

## ORDER GRANTING DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT

On this day came on to be considered Defendant's Motion for Summary Judgment. (D.E. 10.) For the reasons discussed below, the Court GRANTS Defendant's Motion.

**I.    JURISDICTION**

This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331.

**II.   BACKGROUND**

Plaintiff Dennis Briley ("Plaintiff") filed suit on June 23, 2005, alleging discrimination on the basis of race (Caucasian) and national origin, arguing that he was wrongfully terminated from his job at the Corpus Christi Army Depot ("CCAD") while similarly situated Hispanic and African-American workers were not. (See D.E. 1.) On August 26, 2005, an initial pretrial conference ("IPTC") was held at which Plaintiff testified under oath as to the facts of

1

his case.[1]  On March 15, 2005, Francis J. Harvey, Secretary of the Army, ("Defendant") filed his Motion for Summary Judgment (D.E. 10), and on April 26, 2006, plaintiff filed a response in opposition (D.E. 11).

**III.  SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS**

In support of his motion for summary judgment, Defendant offers the following evidence:

Ex. A:    Department of Defense Directive No. 1010.9–Department of Defense Civilian Employee Drug Abuse Testing Program;

Ex. B:    Memorandum dated March 12, 1998, directed to Plaintiff, informing him of proposed removal from his job based on his admission of having used illegal drugs;

Ex. C:    Firm Choice Agreement, dated March 12, 1998, signed by Plaintiff;

Ex. D:    Initial Decision of the Merit Systems Protection Board, dated December 11, 2003, finding Plaintiff's charges of discrimination unsupported; and

Ex. E:    Final Decision of the Merit Systems Protection Board, dated March 3, 2005, affirming administrative judge's decision.

(D.E. 10, attached exhibits.)

The following facts are not in dispute:

Plaintiff began his employment with the Department of the Army in January 1983.  (D.E. 1 at ¶ 10.)

On February 18, 1998, while working at CCAD, Plaintiff was

---

[1] That proceeding has been transcribed and the transcript is filed in this case at D.E. 12.

selected for a random urinalysis.  (D.E. 1 at ¶ 11.)  He was unable to provide a sufficient sample, and was directed to return on February 19, 1998. <u>Id.</u>  The following morning, Plaintiff provided a sample, and it was negative for drugs.  <u>Id.</u>  However, according to Larry Weathers, a Medical Technician who spoke with Plaintiff during the testing, Plaintiff had admitted to illegal drug use the weekend before.  (<u>See</u> D.E. 12, Ex. B at ¶ 2a (proposed removal notice); <u>see also</u> D.E. 12, IPTC Tr. at 8, ll. 2–3 (MR. BRILEY: "They said [I was to be terminated] because I admitted to an employee at the Wellness Center that I had taken drugs."))

On March 12, 1998, CCAD notified Plaintiff that it proposed to remove him based on his own admission of illegal drug use.  (D.E. 10, Ex. B.)  The proposed removal specifically cited to the Department of Defense Directive No. 1010.9, ¶ 6.2.1, that authorizes the determination of illegal drug use based on an employee's admission.  (D.E. 10, Ex. A.)

In addition, the proposed removal notice provided:

> 4.  As per the attached agreement (Enclosure 1) the agency is prepared to offer you a Firm Choice Agreement.  If you enroll in a CCAD approved rehabilitation program, sign the agreement and consent to its terms and conditions, the agency will hold the removal action in abeyance for 12 months from the date the Firm Choice Agreement was signed.  You may inform me, your Branch Chief, of your decision at any time before the reply hearing, or the deciding official at the time of the reply hearing.

(D.E. 10, Ex. B at 2, ¶ 4.)

Plaintiff elected to accept the terms of the Firm Choice Agreement rather than be terminated, and signed the Firm Choice Agreement, dated March 12, 1998. (See D.E. 12, Ex. C at 2.) Plaintiff entered a drug rehabilitation program, that he successfully completed in 1998.

In January, 2003, Plaintiff was employed as a WL-10 Aircraft Engine Mechanic Leader. (D.E. 11 at ¶ 2.) On January 8, 2003, Plaintiff submitted to a random urinalysis, and that test was positive for methamphetamine. (D.E. 1 at ¶ 13.) Plaintiff was not offered a second chance to go through rehabilitation following the January 8, 2003 positive drug test. Id. He was removed from his job in April 2003. Id.

Plaintiff appealed his removal by filing an appeal with the Merit Systems Protection Board. The administrative judge upheld Plaintiff's removal. (D.E. 10, Ex. D.) Plaintiff appealed, and by Final Order entered March 3, 2005, the Merit Board denied Plaintiff's petition for review. (D.E. 10, Ex. E.)

## IV.  PLAINTIFF'S ALLEGATIONS

Plaintiff claims that he was "wrongfully terminated and treated differently on account of his race (Caucasian) and national origin." (D.E. 1 at ¶ 13.) At the IPTC, plaintiff testified that he knew of two workers who had gone through rehabilitation twice, despite the fact that the first choice agreement provides for

4

termination. (D.E. 12, Tr. at 19, ll. 3-9.)  Plaintiff testified that Mr. Stoney, an African-American, and Mr. Brambilla, a Hispanic, both were permitted to enter rehabilitation twice, despite a first choice agreement.  In his summary judgment response, however, Plaintiff no longer argues that he received less favorable treatment than Mr. Stoney, and that argument is deemed abandoned.

## V.  DISCUSSION

### A.  Summary Judgment Standard

Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988).  Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence

of a genuine issue for trial. Celotex Corp., 477 U.S. at 322; Anderson v. Liberty Lobby Inc., 477 U.S. 242, 256(1986); Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. denied, 113 S. Ct. 82 (1992). The controverted evidence must be viewed in the light most favorable to the non-movant and all reasonable doubts must be resolved against the moving party. Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990). Summary judgment is mandated if, after adequate time for discovery and upon motion, the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "In such situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Id. at 322-23. See also Holtzclaw v. DSC Communications Corp., 255 F.3d 254, 257 (5th Cir. 2001).

   **B.   Title VII Employment Discrimination**

   In addressing Title VII claims of racial and national origin discrimination, a court must apply the burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See, e.g., Frank v. Xerox Corp., 347 F.3d 130, 137 (5th Cir. 2003); Johnson v. Louisiana, 351 F.3d 616, 621 (5th Cir. 2003). Under this framework, the burden lies initially with the plaintiff "to raise a genuine issue of material fact on each element of his prima

6

facie case." <u>Johnson</u>, 351 F.3d at 621 (citing <u>Medina v. Ramsey Steel Co., Inc.</u>, 238 F.3d 674, 680 (5th Cir. 2001)).  If the plaintiff presents a prima facie case, "the defendant must then give a legitimate, nondiscriminatory reason for the employment decision." <u>Id</u>.  When the Defendant provides a nondiscriminatory reason for the employment decision, the burden shifts back to the plaintiff to "raise a genuine issue of material fact that shows the defendant's reason may be a pretext for discrimination." <u>Id</u>. Therefore, the summary judgment analysis must begin with the question of whether, viewing the evidence in the light most favorable to the Plaintiff, he has presented sufficient evidence to establish a prima facie case.

### 1. *Prima Facie Case*

In order to establish a prima facie case of discrimination under Title VII, a plaintiff must prove that he was "1) a member of a protected class; 2) qualified for the position held; 3) subject to an adverse employment action; and 4) treated differently from others similarly situated." <u>Abarca v. Metropolitan Transit Authority</u>, 404 F.3d 938, 941 (5th Cir. 2005) (citing <u>Rios v. Rossotti</u>, 252 F.3d 375, 378 (5th Cir. 2001)).

Here, there is no dispute that Plaintiff was qualified for his position and subject to an adverse employment action when he was terminated. Moreover, there is no dispute that Plaintiff was a member of a protected class by virtue of his race and national

origin.  Title VII prohibits discrimination against persons of the racial majority just as equally as it prohibits discrimination against persons of a racial minority.  McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 280 (1976); see also Byers v. Dallas Morning News, Inc., 209 F.3d 419, 425 (5th Cir. 2000).  Likewise, Title VII prohibits discrimination based on national origin "whether that birthplace is the United States or elsewhere." Chaiffetz v. Robertson Research Holding, Ltd., 798 F.2d 731, 732-33 (5th Cir. 1986).  Thus, the only remaining issue is whether Plaintiff was treated differently from others similarly situated.

In order to show disparate treatment, a plaintiff must demonstrate "that the misconduct for which [he] was discharged was nearly identical to that engaged in by an employee not within [his] protected class whom the [employer] retained." Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 221 (5th Cir. 2001) (quoting Smith v. Wal-Mart Stores, 891 F.2d 1177, 1180 (5th Cir. 1990)). The conduct at issue, however, is "not nearly identical when the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment." Id. at 221 (citing Wyvill v. United Cos. Life Ins. Co., 212 F.3d 296, 304-05 (5th Cir. 2000)); see also Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005) (no reasonable jury could conclude that "the alleged theft of alcohol, party decorations, and table decorations" is the "same as stealing

money from a client's gift table at a catered event"); <u>Wyvill v. United Companies Life Ins. Co.</u>, 212 F.3d 296, 305 (5th Cir. 2000) (employees were not similarly situated where they held different jobs and "[m]ost importantly, the decision-makers who disciplined" the employees were different).

In this case, Plaintiff's sole example of disparate treatment is Mr. A. Brambilla, "a Hispanic employee who, similar to Plaintiff, tested positive on a drug screen, [but] was afforded drug rehabilitation and not terminated."  (D.E. 11 at ¶ 2.) Plaintiff contends that his situation was nearly identical to that of Mr. Brambilla because they both held the same position and "both committed the same offense: a [first-time] positive drug screen." (D.E. 11 at ¶ 17.)  However, according to the findings of administrative judge, Mr. Branbilla had not yet participated in drug rehabilitation at the time of his positive drug test, nor had he previously signed a firm-choice agreement.  (<u>See</u> D.E. 10, Ex. D at 5.)[2]  In contrast, Plaintiff had previously gone through rehabilitation in lieu of termination and had signed an agreement explicitly acknowledging that a future positive drug test would

_____

[2] The administrative judge heard testimony from Linda Rinaldi, a Human Resources Specialist, who testified about the drug testing program at CCAD, Joe Herrera, Plaintiff's Director, and Plaintiff. The administrative judge's findings are set forth in his initial opinion that is filed as an exhibit in this case. <u>See</u> D.E. 10, Ex. D. Plaintiff did not file an objection to the exhibit.

result in his removal.[3]  (D.E.19, Ex. C.)  The fact that Defendant had already given Plaintiff a chance to rehabilitate, and that Plaintiff had violated the terms of the Firm Choice Agreement, "accounts for the difference in treatment" between Plaintiff and Mr. Brambilla with respect to their first positive drug tests.  See Wallace, 271 F.3d at 221; see also Kelley v. Lockheed Martin Corp., 2002 WL 31319405 at *2 (5th Cir. 2002) (unpublished) (holding that employees were not similarly situated, in part because the retained employee "had not been given the benefit of counseling, as [plaintiff] had been"); Jorden v. Potter, 2005 WL 1805990 at *1 (5th Cir. 2005) (unpublished) (employees did not have nearly identical circumstances where one "employee was not employed subject to a Last Chance Agreement" and the other was so employed).

---

[3] Defendant claims that the Agency offered Plaintiff the 1998 Firm Choice Agreement because he had admitted to "Mr. Larry Weathers, the Medical Technician, that [he] had been using drugs." D.E. 10, Ex. B at ¶ 2(a).  Plaintiff, however, testified that he never made such an admission, and claims instead that he only admitted that he was *thinking* about taking drugs.  D.E. 12, Tr. at 5-6, ll. 13-15.  Whether Plaintiff made an admission of drug use is irrelevant.  The Fifth Circuit has held that, even where an employer objectively errs in concluding that an employee violated a work rule or policy, "absent evidence of discriminatory motive for the employer's discipline of the employee, such error alone is insufficient to establish [discrimination]."  See Dismuke v. City of Indianola, 32 Fed.Appx. 126, at *3 (5th Cir. Feb. 11, 2002) (unpublished); see also Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive"); Waggoner v. City of Garland, 987 F.2d 1160 1165-66 (5th Cir. 1993) (stating that "the inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief;" evidence related to the employee's innocence it is "irrelevant").

At the Merit Board hearing, Linda Rinaldi testified that, since 1986, only five CCAD employees had ever been allowed a *second* chance at rehabilitation, and that Plaintiff's circumstances differed from each of those employees. (D.E. 10, Ex. D at 4.) Ms. Rinaldi stated that these "second-offer exceptions" were made for two reasons: (1) when there had been a long lapse of time (9-12 years) since the employee's first rehabilitation; or (2) the employee tested positive for drugs while in a "safe harbor."[4] (D.E. 10, Ex. D at 4.)  In Plaintiff's case, however, he was not in the "safe harbor," and only four years had passed since he had successfully completed his first drug rehabilitation.

Moreover, the decision-maker who offered those five employees a second chance to rehabilitate was different than the decision-maker who dealt with Plaintiff.  Plaintiff's Director, Joe Herrera, has *never* allowed an employee more than one chance at rehabilitation.  Mr. Herrera testified that he has removed sixteen employees for positive drug tests, six 6 Anglos and ten Hispanics. (<u>See</u> D.E. 10, Ex. D at 5 (Summary of testimony of Joe Herrera.)) Plaintiff has failed to meet his burden of proving that Defendant treated him differently from other employees in "nearly identical" circumstances. <u>See</u>, <u>e.g.</u>, <u>Wyvill</u>, 212 F.3d at 305 (employees were

---

[4] "Safe harbor" refers to situations where the employee voluntarily commits his or her self to drug rehabilitation *before* being called for a drug test. (<u>See</u> DE D at 4, n.3.)

not similarly situated where, "[m]ost importantly, the decision-makers who disciplined" the employees were different); Burnett v. Thompson, 2002 WL 261526 at *3 (5th Cir. 2002) (unpublished) ("[t]he fact that different decision-makers disciplined [plaintiff] and [other employees] supports the [conclusion] that the employees were not nearly identically" situated).

### 2. *Evidence of Pretext*

Defendant has established that Plaintiff's positive drug test, coupled with the first choice agreement, is a legitimate, non-discriminatory justification for Defendant's discharge of Plaintiff. As such, the burden shifts back to Plaintiff to show that the Defendant's justification is "in fact a coverup for a racially discriminatory decision." McDonnell Douglas, 411 U.S. at 805. In establishing pretext, a "plaintiff cannot succeed by proving only that the defendant's proffered reason is pretextual. . . . Rather, a reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, *and* that discrimination was the real reason." Walton v. Bisco Industries, Inc., 119 F.3d 368, 370 (5th Cir. 1997) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993)).

Plaintiff's argument on this point is that the CCAD's "distinction regarding the length of time between positive drug screens is arbitrary and creates a fact issue as to whether or not

12

he considered Plaintiff's race and/or national origin in making such a arbitrary distinction." (D.E. 11 at ¶ 15.)  The mere fact that Plaintiff thinks the Defendant's distinction is arbitrary or unreasonable, however, is not enough because the Plaintiff must also offer evidence to "suggest that impermissible discrimination underlies" that distinction.  See Walton, 119 F.3d at 372.  The plaintiff's evidence "to rebut the employer's reasons [must be] substantial, [otherwise] a jury cannot reasonably infer discriminatory intent."  Id.  Moreover, a plaintiff's own subjective belief that his employer had a discriminatory motive is insufficient.  Little v. Republic Refining Co., Ltd., 924 F.2d 93, 96 (5th Cir. 1991); Grimes v. Texas Dept. of Mental Health and Mental Retardation, 102 F.3d 137, 141 (5th Cir. 1996).  Plaintiff has failed to offer any evidence to show that Defendant had discriminatory motive in discharging Plaintiff.  Therefore, Defendant is entitled to summary judgment on Plaintiff's claims.

**VI.  CONCLUSION**

For the reasons discussed above, the Court GRANTS Defendant's Motion for Summary Judgment(D.E. 10), summary judgment is granted

13

in Defendant's favor, and Plaintiff's claims against Defendant are dismissed with prejudiced.

SIGNED and ENTERED this 30th day of May, 2006.

_____
Janis Graham Jack
United States District Judge